## Green v. Stevens.

1. *Trespass to Real Estate—Highways.*—When a person fences in a part of the highway he is liable to a penalty, and the fence as an obstruction may be removed by the public officials or by a private citizen.

2. *Highways—Encroachments by Fencing—Acceptance and Dedication, etc.*—If, when a man owning the land adjacent to a highway, encroaches upon it by fencing, he gives to the public another way outside of his fence connecting with the road, the way so given may be accepted by the public, and in such case there will be as to such portion, a public highway it by dedication. A road so acquired will be just as binding on the land owner as though it had been laid out in the first instance by the authorities, and the owner can not thereafter withdraw it.

3. *Dedication—Lands of Minors Dedicated by Occupant, etc.—Estoppel, etc.*—Where a person, not the owner of lands which were adjacent to a highway, changed the location of the highway by moving fences, etc., and the minors, in whom the title of the lands was vested, acquiesced in such change and re-location after they became of age,

and sold the lands to another, *it was held* that they were bound by the original act of re-location as to all rights acquired by the public by reason thereof.

**Memorandum.**—Trespass. Appeal from the Circuit Court of Greene County; the Hon. LYMAN LACEY, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892. Opinion filed March 6, 1893.

## APPELLEE'S STATEMENT OF THE CASE.

Appellee sued appellant and one Anderson, in trespass, for damages resulting to him from the act of the defendants in cutting and removing his fences.

The appellant pleaded the general issue, but on the trial, the cutting and removal of plaintiff's fences, as charged, and that he was damaged thereby, was not denied. Special pleas in justification of the cutting and removal of the fences, on the ground that the *locus in quo* in each instance was a public highway, were filed.

The theory of appellant upon the trial, was that the appellee's fences were obstructions upon a public highway, and as such were lawfully cut and removed, and to this point his evidence was directed.

## APPELLANT'S BRIEF, WITHERS & RAINEY AND W. C. SCAN-LAND, ATTORNEYS.

Upon the question that a road was laid out and established, the record of the proceedings of the commissioners, the report of the viewers and the order establishing the public highway, introduced in evidence by the appellant in this case, are conclusive. "It is not necessary to produce record evidence of a road, and if such evidence is introduced, as for instance, the order establishing the road, it is not necessary, prior to the introduction of such order, to show that all of the previous steps required by the statute had been taken." Nealy v. Brown, 1 Gilm. (Ill.) 10; Dumoss et al. v. Francis, 15 Ill. 543; Henline et al. v. The People, 81 Ill. 269; Galbraith v. Littiech, 73 Ill. 211.

In the following cases the question as to rights acquired

by the public in traveling over vacant and unoccupied land is discussed. Kyle v. Town of Logan, 87 Ill. 64; Fox v. Virgin et al., 5 Brad. 515; Alvord v. Ashley, 17 Ill. 363.

"It seems to be well settled, that no particular time is necessary for evidence of dedication." "If the act of dedication be unequivocal it may take place immediately." Marcy v. Taylor, 19 Ill. 636; Wragg et al. v. Penn Township, 94 Ill. 25.

"Where a person is in the actual, open and notorious possession of land, claiming to own the same, this will afford notice to the world of all his rights and equities in the same. Strong v. Shea, 83 Ill. 575. Possession of land is notice to the purchaser thereof of all the interest claimed by the person in possession. Williams v. Brown, 14 Ill. 200; Cowen v. Loomis, 91 Ill. 132; D'Wolf v. Pratt, 42 Ill. 198. Purchaser is estopped from denying validity of plat, having purchased with reference to it. Field v. Carr, 59 Ill. 198. The parties must be the same, or there is no estoppel by former judgment. Miller v. McManis, 57 Ill. 126; Merrin v. Lewis, 90 Ill. 505; Riverside v. Townshend, 120 Ill. 12; Garrick et al. v. Chamberlain et al., 97 Ill. 620. To make a matter decided, *res adjudicata*, there must be a concurrence of four conditions: First, identity of the thing sued for; second, identity of the causes of action; third, identity of persons; fourth, identity of parties. Bouvier's Law Dic. 467.

A judgment or decree set up as a bar by plea, or relied on as evidence by way of estoppel, to be conclusive, must have been made, first, by a court of competent jurisdiction upon the same subject-matter; second, between the same parties; third, for the same purposes. Aspden v. Nixon, 4 How. 467.

If, upon the face of the record, anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered in evidence. Russell v. Place, 94 U. S. 606.

Abandonment of a highway is not a question of the time of its non-user, but is simply a question of fact to be established like any other question of fact in the case." Brockhausen v. Boehland, 36 Brad. 229.

Appellee's Brief, James R. Ward, Attorney.

At common law, the open, adverse and uninterrupted use of a road by the public as a highway, under a claim of right, for a period of twenty years continuously, was sufficient to clothe such road with the legal character of a public highway. Daniels v. People, 21 Ill. 442; Lewiston v. Proctor, 27 Ill. 417; Gentleman v. Soule, 32 Ill. 271.

In 1887, the Legislature of this State enacted an amendment to Sec. 1 of the act in regard to roads and bridges, in counties under township organization. The amendment provides, " That all roads in this State which have been laid out in pursuance of any law of this State, or of the Territory of Illinois, or which have been established by dedication, or used by the public as a highway for fifteen years, and which have not been vacated in pursuance of law, are hereby declared to be public highways." Laws 1887, 263.

Was the road on which the fences were cut a public highway? This was the sole issue in the case. We contend that a judgment against a city, county or town, in matters of general interest, binds the inhabitants thereof; that a judgment upon an issue is binding upon all parties and privies thereto; that if in a suit by a town to recover a penalty for obstructing a highway, it is determined that the *locus in quo* is not a highway, no inhabitant of that town can remove the obstruction, and justify the act on the ground that the *locus in quo* is a public highway, and re-litigate the question. Harmon v. Auditor, etc., 123 Ill. 130; Crosby v. Gipps, 16 Ill. 352; School Directors v. School Directors et al., 135 Ill. 472; Rhoads v. City of Metropolis, 36 Ill. App. 123; Bennitt v. Star M. Co., 119 Ill. 14; Jenkins v. Int. Bk., 111 Ill. 467; Cole v. Favorite, 69 Ill. 460.

Opinion of the Court, Wall, J.

This was an action of trespass by appellee against appellant.

The tortious act complained of was the cutting of certain wire fences belonging to appellee, and the defense was that the fences were built across a public highway. The ques-

tion, therefore, was whether the places where the fences were cut were in the highway. The appellee recovered a verdict and judgment thereon for $10.

Since the case was submitted to us it has been suggested that the bill of exceptions is faulty in not professing to contain all the evidence, in not bearing the seal of the judge who signed the same, and in not appearing to have been filed in the office of the clerk, but by an additional record furnished at the instance of appellant, it appears that these objections were based on an imperfect transcript of the record and do not really exist.

The record is brought here by appellant. Errors and cross-errors have been assigned thereon.

It appears that at the March term, 1837, a petition was presented to the county commissioners of Greene County, to open a public road from Rattan's Mills to Carrollton, the county seat. Viewers were appointed, and on their report at the September term following, an order was made to open the road.

The following year it was opened. It passed over the land now owned by appellee, containing forty acres, entering at a point on the south line east of the center and leaving at a point on the north line a few rods from the northwest corner.

It was "blazed" or marked and was used by the public thereafter as so marked, except as will be stated, until closed by the appellee. The forty acre tract was vacant and unoccupied when the road was laid out, and so far as the evidence shows, remained so for more than twenty years, when one Musgrove took possession as owner. He died in 1866, leaving his widow and children in possession. Afterward the widow married one Harrigan, who remained in possession a considerable time. The Musgrove heirs, having become of age, sold the land to appellee in 1883-4, and he has since been in possession.

It seems that Musgrove fenced in a part of the road, turning the travel around his fence, but just where this was or how much it amounted to, is not clear.

There is evidence also that one Hedspeth fenced across the road at the south end of the forty, but how much he took in or on whose account he so acted, is not shown. Still later, in 1878, Harrigan fenced in a part of the road on the south end, cutting a road out around his fence for the public. Before that, however, a change had been made at the north end.

The forty acre tract lying north of this came into possession of one Davis, and in fencing his land he took in about an acre lying west of the road, and thus turned the road to the west so that it passed out of this forty at the northwest corner thereof. Afterward at the instance of one Clark Stevens, the grandfather of the Musgrove children, the road supervisor required Davis to move his south fence back twenty feet, so as to give half of the road at this point. Later, this fence having been washed away by high water, Davis rebuilt on the line, again turning all the travel on this forty. This was the situation when appellee bought the land. It is somewhat uncertain how far the line of the road through this forty was changed by these encroachments.

According to some of the testimony, the whole of it was affected, and when the appellee bought the land no part of the road was on the old blazed line through this forty; but the weight of the evidence is rather to the effect that only the north and south ends were changed and that over a considerable part of the interior the original track was followed, always. But be this as it may, the authorities recognized the road as changed from time to time across this forty as a public road, and worked it as such, making repairs when deemed necessary and proper.

The appellee built a fence across the south and west lines of this forty, crossing the road where it passed around the fence built by Harrigan on the south and where it passed around the Davis fence on the north. This was done first in 1888, and the fence was taken down by appellee for reasons not necessary now to state. He rebuilt it in 1891, when it was taken down by appellant; therefore this suit.

It thus appears that a public road from Rattan's Mills to
Carrollton had been laid out and was used by the public for
fifty years or more, and that during all that time it passed
over this forty on the line as laid out originally, except so
far as diverted by various unlawful acts of encroachment.
As we understand the argument of appellee it is that by
these acts the public were deprived of the right to the road.

When a man fences in a part of the highway he is liable
for a penalty and the obstruction may be removed by the
public officials or by a private citizen.

If, when he so encroaches, he gives to the public a way
outside of the fence, the way so given, connecting again
with the road, may be accepted by the public, and in such
case there will be, as to such portion, a public highway by
dedication. A road so acquired will be just as binding on
the land owner as though it had been laid out in the first
instance by the public authorities.

The law will not allow him to commit an unlawful act
and profit by it in the manner suggested by the argument.

Having unlawfully interfered with the road at one place
he can not be allowed to say that because the public con-
sented to the change thus made, he had a license to take
away the road he had thus dedicated and to deprive the pub-
lic of the use of the whole of the road across his land. Such
a proposition needs only to be stated to be condemned. For
his own profit or convenience the owner takes in a part of
the road, cutting out a way around, in lieu of what he has
without right appropriated.

The public, not objecting, and perhaps not seriously
affected by the change, accepts the new way instead of the
old.

By what right can the owner withdraw what he has so
given and how can he then insist that by his own wrongful
act he has deprived the public of a right it formerly
enjoyed?

Successive encroachments acquiesced in by the public
might result in changing the entire line across his land, and
he would be bound to recognize it all as a lawful highway.

Much stress is laid, however, upon the fact that when Harrigan made his change he was not the owner of the land, and that the real owners were under disability so that they could not bind themselves by their own act, nor could they be bound by the act of another.

Concede this, yet when they came of age they continued the encroachment by suffering the fence to remain and sold the land in this condition to appellee, no doubt realizing more for the property because of the condition. By thus appropriating the benefit flowing from Harrigan's act they became bound by it and are estopped to deny its legal import. So the appellee, buying the land in this condition, took it subject to the rights of the public, and for five years or more he acquiesced in the situation.

It is urged, however, that the exit of the road at the northwest corner was not where it was originally, and that this was produced wholly by the act of Davis.

When Harrigan made the change at the south end and provided a way around his fence he did it with reference to the whole of the road, as it then was, on the land of which he had possession. It would not be worth while to go around his obstruction if one could not go beyond and travel the whole road.

It was a necessary implication that the change as made at the north end was acquiesced in by him, and as the road so changed was accepted by the public and worked where necessary, the public acquired the right of exit there, so far as Harrigan was concerned. When the Musgrove heirs came to their estate they found it in the condition as left by Harrigan, and as already shown, accepted it by taking the benefit of it. This included all that was implied and estopped them to complain of the change at the northwest corner.

As to the cross-errors but little need be said. After appellant had cut the wires and the act for which this suit is brought was complete, the highway authorities brought suit against appellee for obstructing the road. That suit resulted favorably to the appellee, and he sought to introduce the record thereof in evidence, for the purpose of show-

ing an adjudication that there was no public road at the
point where appellant cut the wires. The evidence was
excluded and it is upon this action of the court that appel-
lee assigns cross-errors.

· It is urged in support thereof that, when the public author-
ities litigate, with a citizen, a question affecting the public,
the adjudication binds all who claim in the right of the pub-
lic, and it is said by counsel, that it would be unjust, after it
had once been determined that the *locus in quo* is not a high-
way, to permit any one to treat it as a highway and harass
the land owner by trespass, and compel him to re-litigate the
question in other cases.

Whatever may be the proper rule as to the case of one
opening a fence after the *locus in quo* had been adjudged
not a highway, in a suit directly involving the question
between the public authorities and the land owner, we are
constrained to say it is not applicable to the case of one
whose act was committed before the adjudication.

He had no control over the suit afterward commenced.
His act was complete. He could not undo it, and to bind
him by the result of a subsequent suit in which he could
take no part, and which might, by mischance or collusion,
have been wrongly decided, would be the height of injustice.
We think the court ruled properly in excluding the record,
and the cross-errors should be overruled.

As we regard the case presented by the record the appel-
lee was not entitled to a recovery, and the court should have
granted a new trial. In this view of the matter, it is not
necessary to discuss the instructions. Should the case on
another trial present substantially the same aspect as now,
it will be proper to instruct the jury to find for the defend-
ant.

The judgment will be reversed and the cause remanded.